650 P.2d 1227

**PRESTON MOTOR COMPANY, INC.,**
Plaintiff/Appellant,

v.

**Rene De S. PALOMARES and Joan Lynn Palomares, husband and wife,**
Defendants/Appellees.

**No. 2 CA–CIV 4196.**

Court of Appeals of Arizona,
Division 2.

April 23, 1982.

Rehearing Denied June 3, 1982.

Review Denied June 29, 1982.

**246**

D'Antonio & D'Antonio, P. C. by Patricia A. Ihnat, Tucson, for plaintiff/appellant.

Lieberthal & Kashman, P. C. by Mark Rubin, Tucson, for defendants/appellees.

## OPINION

BIRDSALL, Judge.

This is an appeal from a judgment in favor of the defendants in an action for contract damages resulting from the premature termination of an "open-end" automobile lease. The trial court ruled that the defendants had justifiably revoked acceptance of the automobile and were not liable on the contract.

We shall state the facts in the light most favorable to supporting the judgment below. *Polk v. Koerner,* 111 Ariz. 493, 533 P.2d 660 (1975). Since Mrs. Palomares was only peripherally involved in the transactions that led to this suit, we shall refer to the appellees in the singular, as "Palomares" or "appellee."

On November 30, 1978, the parties executed an "open-end" lease of a 1979 Chevrolet Chevette. They have agreed that this lease was a "transaction in goods," subject to the provisions of Article Two of the Uniform Commercial Code, A.R.S. § 44–2301 et seq. *See* A.R.S. § 44–2302; *Knox v. North American Car Corp.,* 80 Ill.App.3d 683, 35 Ill.Dec. 827, 399 N.E.2d 1355 (1980). Furthermore, although the lease agreement expressly disclaimed that it was intended to convey title, the parties have agreed that the transaction was "a kind of sale" entered into in contemplation that Palomares would acquire title by paying an "agreed depreciated value" at the end of the lease term, and that the "lessee" and "lessor" were actually "buyer" and "seller," respectively.

After taking a test drive and making the usual car buyer's cursory inspection of the automobile, Palomares took delivery on the day the lease was executed. Within a week, he discovered that the car was consuming what he thought was an excessive amount of motor oil, as much as two and one-half quarts on a 128-mile round trip to Tucson from his home near Nogales. An inspection of his garage floor (where the car was regularly parked) revealed no signs of an oil leak, but the car ran "like a crop duster" trailing great clouds of black smoke in its wake. Palomares testified that he took the car back to Preston Motors two or three times during the month of December, 1979, but that the personnel there refused to check the car for a defect and insisted that oil consumption was normal during the "break-in" period.

Relying upon these assurances that oil consumption did not indicate a defect, Palomares retained possession of the vehicle, but noticed that it was consuming more and more oil as mileage accumulated. In early January, 1979, after Palomares had possessed the car for just over a month, it was involved in a collision with a deer on the Nogales-Patagonia highway about one and one-half miles from the Palomares residence. Palomares inspected the car and, noticing that there still appeared to be quite a bit of water in the damaged radiator, drove it home and parked it overnight in sub-freezing weather. During this short drive he saw no signs that the engine was overheating. No steam or spray came from the engine, and the dashboard temperature warning light did not come on.

The next morning, Palomares decided to take the car to Preston Motors for repair of the accident damage. After filling the radiator with anti-freeze (this took only one-half gallon) he drove the eight miles to the dealership. The car again showed no signs of overheating.[1] Upon his arrival at Preston Motors, Palomares was told that the dealership had no body shop and that he should take the car to a local repair shop, Total Automotive, to have it fixed.

Palomares drove the car about a mile to Total Automotive. Again, Palomares testified, it showed no signs of overheating. This testimony was corroborated by that of Total Automotive's owner, Joseph Stack, who said the car showed no outward evidence of overheating; that the radiator was still about half full when the car arrived at his business; and that the fluid was above the sensing device of the warning system.

Stack took several weeks to completely repair the accident damage, replacing even slightly damaged parts with new parts at Palomares' insistence, even though he believed that some of the parts could have been repaired. When Palomares got the car back, he found that it ran just as it had before—it used large amounts of oil, misfired frequently, and often stalled, apparently because of badly fouled spark plugs. He therefore took the car back to Preston Motors and insisted that it be repaired.

At Preston Motors, the car engine was disassembled and inspected. This revealed that the engine had been damaged by overheating. The service manager testified that the overheating had been caused by the accident with the deer, and that the repair costs would not be covered by the manufacturer's warranty. A certified mechanic who testified for the appellee, however, stated that the amount of coolant loss described by Palomares and Stack would not itself cause the amount of overheating indicated by the damage. He suggested

that such heat would be caused by a combustion chamber leak resulting from improper assembly of the cylinder head. Other testimony from Ray Preston indicated that excessive oil consumption could result from a leaking combustion chamber.

The dealership's owner and general manager, Harold Preston, testified that he sought and obtained a "policy adjustment" from the manufacturer, so that Palomares would not have to pay for the repairs even though the dealer did not believe the damage to be a result of a factory defect. Preston Motors, however, did not have the facilities to complete the repairs, and found it necessary to send the aluminum cylinder head to a repair business in Tucson. When the head returned, its valve seats were installed upside-down, and Preston sent the head back to the Tucson repair shop for correction. This delay in finishing the repairs upset Palomares, who eventually informed the dealer that he would consider his lease terminated unless the car was ready on April 4, 1979 (about two months after it was taken to Preston). When the repairs were not completed on that date, Palomares stopped making lease payments. Following procedures established by lease provisions pertaining to "Default" and "Premature Lease Termination," the dealership sold the car at auction for $3,300 and brought this action to recover the remainder of the lessee's agreed liability for such lease termination (computed by a formula not relevant here). After hearing two days of testimony, the trial court, sitting without a jury, found that the remedy established by the contract was unavailable because Palomares had revoked his acceptance of the automobile and was no longer bound by the contract.[2]

The appellant has advanced a number of arguments concerning the sufficiency of the evidence to support findings of fact incorporated or implicit in the judgment. It also

---

1. The dealership's service manager, Ray Preston, testified that the car was spewing water and steam when it arrived, but we must assume that this testimony was disbelieved by the court.

2. The court also found for Preston Motors on a counterclaim filed by the defendants, who have dismissed their appeal from that portion of the judgment.

contends that the trial court abused its discretion by failing to preclude testimony of an expert defense witness who was not disclosed until two days before trial. Since the sufficiency of the evidence depends, in part, upon that witness's testimony, we believe it necessary to determine initially whether he should have been allowed to testify.

Throughout the discovery phase of the proceedings below, the appellee had asserted that he and his wife would be his only witnesses. Two days before trial, however, he notified opposing counsel and the court that he intended to call three other witnesses. He contended that these were "impeachment" witnesses, but his statements of their proposed testimony clearly showed that they would rebut, not impeach, the appellant's witnesses. *See Zimmerman v. Superior Court*, 98 Ariz. 85, 402 P.2d 212 (1965); *Ries v. McComb*, 25 Ariz.App. 554, 545 P.2d 65 (1976). The appellant therefore requested the sanction specified in Rule 26(e)(1), Arizona Rules of Civil Procedure, 16 A.R.S.:

> "A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify and the substance of his testimony and (C) the identity of any other person expected to be called as a witness at trial. If a party fails to supplement his responses with respect to any question directly addressed to (B) or (C) prior to 30 days before the date of trial, unless the parties otherwise agree, *any witness not so identified shall not be permitted to testify except for good cause shown.*" (emphasis added)

The trial court precluded testimony of two of the three witnesses. As to the third witness, a local mechanic, the court reserved its decision until after the close of the appellant's case. It then decided to allow the mechanic to testify because the court needed "some help on auto mechanics."

A review of the nearly 400 pages of reported testimony leads to the conclusion that the court did not err in allowing the testimony of the mechanic. During the appellant's case, there had been testimony from two persons claiming expertise in auto mechanics, Ray Preston and Joseph Stack. Their testimony was contradictory in some respects, and neither witness offered real "nuts and bolts" testimony about the internal workings of the engine or the materials used in its manufacture, even though these subjects were of obvious concern to the court hearing this difficult case. Stack never gave a direct opinion as to the cause of the overheating. Preston gave his opinion, set forth above, but also admitted that, despite periodic training at a General Motors facility in Phoenix, he possessed no certification as a mechanic and had never repaired a car himself. We are therefore unable to find fault with the trial court's assessment that it needed "some help on auto mechanics." The court obviously felt that testimony of the appellee's witness was necessary to a fair determination of the facts. The trial court's finding of good cause under the facts of this case was not an abuse of discretion.

Furthermore, we find no prejudice to the appellant from the court's effort to learn the truth. Before allowing the mechanic to testify, the court offered the appellant's counsel a continuance for purposes of a deposition or interview of the mechanic, and the offer was declined. Appellant's counsel did interview the witness during a lunch recess, and was able to conduct an incisive cross-examination. We note also that the two days of testimony were five days apart, so that even without benefit of a trial continuance the appellant could have interviewed the mechanic, but for some reason chose not to do so. Finally, we believe it is significant that the disputed witness appeared as an expert on the very subject of the appellant's business, automobiles, making the appellant perhaps the least likely of all conceivable parties to be surprised by his testimony or to be unable to rebut it.

We turn now to the statute involved in this case and to the appellant's complaints concerning findings necessary under that statute. A.R.S. § 44–2371 provides:

"A. The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:

1. On the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; and

2. Without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

B. Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

C. A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

The statute is identical to § 2–608 of the Uniform Commercial Code.

■ First, the appellant contends that the evidence failed to establish a non-conformity, i.e., a defect in the automobile as it was delivered to Palomares. The appellant argues that the only cause of the engine's overheating was the loss of coolant and Palomares' driving the car after the accident. We find, however, that the evidence on the question was in conflict and was sufficient to support findings that the car was defective before the accident and that the engine's overheating was caused by that defect.

Although much testimony was elicited at trial in an effort to identify the specific cause of the overheating, it was not necessary for the appellee to prove, or the court to find, the specific mechanical defect of the automobile. That the engine had been severely damaged from overheating was indisputable evidence that *something* was

very wrong with the car, and the question for the court was whether that "something" was a defect that existed before the accident or was a result of the accident. If the court believed the appellee's evidence that damage from the accident did not cause the overheating, it could deduce that the defect existed before the accident. That conclusion is buttressed by evidence that excessive oil consumption would be a *symptom* of such a defect, even if oil consumption was not itself the *cause* of the damage, and by Palomares' testimony that the vehicle's performance problems after repair of the accident damage were identical to those displayed before the accident. Since the court's finding of a non-conformity is not clearly erroneous, it will not be disturbed on appeal.

■ The appellant also attacks the court's finding, embodied in its judgment, that a two-month delay in repairing the automobile was *per se* unreasonable. This finding was not essential to the judgment. The appellant's argument assumes that Palomares accepted the Chevette with knowledge of the defect "on the reasonable assumption that its non-conformity would be cured" so that the court was required to find that the defect had not "seasonably" been cured, under A.R.S. § 44–2371(A)(1). The evidence, however, showed that Palomares' acceptance was "[w]ithout discovery of such non-conformity" and reasonably induced by the "seller's assurances" that excessive oil consumption did not indicate a defect. Where the buyer's acceptance is as described in A.R.S. § 44–2371(A)(2), he may revoke the acceptance without waiting for a cure, seasonable or otherwise, by the seller. *Werner v. Montana,* 117 N.H. 721, 378 A.2d 1130 (1977); *See also McCormick v. Ornstein,* 119 Ariz. 352, 580 P.2d 1206 (App. 1978). This right is not waived if the buyer, having no obligation to do so, nevertheless allows the seller to attempt to correct the defect. *Chaplin v. Bessire & Co.,* 361 S.W.2d 293 (Ky.1962). Since the finding of unreasonable delay in effecting a cure is not essential to the judgment, error in that finding will not result in reversal.

■ Regardless of whether Palomares was obligated to allow repair under A.R.S. § 44–2371, however, the appellant argues that he had such an obligation under a provision of the lease agreement making repair of the vehicle his "exclusive remedy." The appellant points to the following provision:

> "*Maintenance and Repairs:* Lessee shall pay for all maintenance and repairs to keep the vehicle in good working order and condition and will maintain the vehicle as required to keep the manufacturer's warranty in force. The vehicle will be returned at the end of the lease period in good condition, reasonable wear and tear excepted."

We see nothing in this provision making repair an "exclusive remedy" or indicating a waiver of rights under A.R.S. § 44–2371.

Continuing in the same vein of argument, however, the appellant contends that the finding that the delay in cure was *per se* unreasonable also meant that Palomares had not exercised his option to revoke acceptance in a reasonable amount of time, as required by A.R.S. § 44–2371(B). Simply stated, the appellant is arguing that a time lapse that is unreasonable for one purpose is unreasonable for all purposes. This logic would reduce much of the statute to a nullity, and would preclude a buyer who accepted with knowledge of a defect, and who was therefore obligated to allow an effort to cure (§ 2371(A)(1)), from ever being able to revoke acceptance. *See* Comment 4, Uniform Commercial Code (U.L.A.) § 2–608.

■ The appellant further contends that Palomares was precluded from revoking his acceptance because the automobile had been damaged in an accident before he returned it for repair of its persistent performance problems. This argument is based upon that portion of A.R.S. § 44–2371(B) which requires the buyer to revoke "before any substantial change in the condition of the goods which is not caused by their own defects." This provision is intended to seek "substantial justice in regard to the condition of the goods restored to the seller" by precluding revocation "if the goods have materially deteriorated except by reason of their own defects." Comment 6, Uniform Commercial Code (U.L.A.) § 2–608. The condition set forth is satisfied if the buyer is able to return the goods in substantially the same condition as they were received. *Hydrick v. Mehlman's Inc.*, 253 S.C. 652, 172 S.E.2d 824 (1970). In this case, even though the car had been damaged in an accident, there was testimony that every dent, scratch, and wrinkle had been fully repaired and every damaged part replaced before the car was returned to Preston Motors, and that Preston (whose used car department was the purchaser at the auction) had later sold the car for an amount almost equal to that which it had originally paid to purchase the car from General Motors. We cannot say, therefore, that the court committed clear error in finding that the car was returned in substantially the same condition as it was received, except for deterioration caused by its own defects.

■ The appellant also contends that the evidence established a waiver of Palomares' right to revoke acceptance. This argument is based upon the evidence that Palomares retained the vehicle after learning that it was using oil. The appellant again assumes that the oil consumption was the defect rather than a symptom of the defect (as the evidence suggests) and ignores the important fact that Palomares' retention of the car was caused by the seller's assurances that there was no defect. The waiver argument is without merit.

Finally, the appellant contends that the trial court erred in making a finding, embodied in its judgment, that Preston Motors undertook to repair the car under the factory warranty, rather than under a "policy adjustment." That finding, whether correct or erroneous, is not essential to the judgment and will not form a basis for reversal.

Affirmed.

HOWARD, C. J., and HATHAWAY, JJ., concur.