730 P.2d 273

**PACIFIC AMERICAN LEASING CORP., an Arizona corporation, Plaintiff-Appellant,**

v.

**S.P.E. BUILDING SYSTEMS, INC., an Arizona corporation, Defendant-Appellee.**

**Nos. 1 CA–CIV 8336, 1 CA–CIV 8432.**

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 9, 1986.

---

* The Honorable Yale McFate was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 20.

Piatt & Livoni, P.C. by Norris C. Livoni, Phoenix, for plaintiff-appellant.

Perry, Drutz & Musgrove by John R. Perry, Jr., Prescott, for defendant-appellee.

## OPINION

HAIRE, Judge.

The issues in this appeal involve the enforceability of an equipment leasing agreement entered into by two business entities, in which the lessor disclaimed all responsibility for the suitability or performance of the equipment.

S.P.E. Building Systems, Inc. (Building Systems) sought a computer system to automate and integrate various business operations. Building Systems contacted CSS Company (CSS), a distributor of Cado Computer Systems (Cado), after seeing an advertisement for Cado equipment in a professional journal. CSS sent brochures to Building Systems describing Cado computer hardware, and Cado software programs designed for contractors. Building Systems considered purchasing the Cado system, but decided instead to lease it through Pacific American Leasing Corporation (Pacific American Leasing).

In March 1980, Building Systems executed a lease agreement with Pacific American Leasing. The lease was accepted by Pacific American Leasing in April 1980. The lease covered only the computer hardware, and not the software, which Building Systems purchased directly from CSS under a separate agreement. In addition to the lease, Pacific American Leasing required that Kurt Bonelli and Dennis Voss, the major stockholders of Building Systems, execute a guaranty of Building Systems' performance of the lease.

On April 15, 1980, Building Systems signed a receipt for the computer system delivered by CSS. On April 28, 1980, Building Systems sent Pacific American Leasing an acceptance certificate which acknowledged that the computer had been installed and was operating satisfactorily. With the acceptance certificate, Building Systems sent a letter requesting that Pacific American Leasing withhold 25% of the purchase price owed to CSS pending Building Systems' approval of the integration of the leased hardware with the software purchased from CSS. In accordance with this request, Pacific American Leasing paid CSS 75% of the leased equipment (hardware) purchase price. Building Systems paid its monthly rental as agreed and there was no further contact between Pacific American Leasing and Building Systems for four months. In August 1980, Building Systems and CSS entered into a one year computer service agreement. On that same day, at the request of Building Systems, Pacific American Leasing paid the remaining 25% of the hardware purchase price to CSS.

Building Systems made the first twelve of 48 monthly rental payments due under

the lease. Apparently Building Systems experienced problems with the computer throughout this first year. However, Pacific American Leasing was not advised of any problems until May 1981, when Building Systems attempted to revoke its acceptance of the computer equipment system and then refused to make further rental payments to Pacific American Leasing.

Pacific American Leasing filed a complaint against Building Systems, Bonelli and Voss seeking damages for breach of the lease agreement. No responsive pleadings to this complaint were filed by the defendants because of settlement attempts. Accordingly, in March 1982, Pacific American Leasing, Building Systems and CSS entered into a series of agreements in an attempt to resolve the dispute. All parties agreed that Building Systems could sublease the computer system to CSS with the rent assigned to Pacific American Leasing. They agreed further that Building Systems, Bonelli and Voss would remain fully obligated under the original lease and guaranty, and that Pacific American Leasing could proceed against them if CSS failed to perform under the sublease.

When CSS failed to perform in accordance with the terms of the sublease Pacific American Leasing filed a new complaint against Building Systems for breach of the original lease agreement, and against Bonelli and Voss on their guaranty of that lease. Pacific American Leasing also asserted a claim against CSS on the sublease of the equipment and against Hugo Van Cleve on a guaranty of that sublease. Upon the filing of summary judgment motions by the parties, the trial court ruled in favor of Building Systems on the theory that because of the failure of the computer system to function properly, Pacific American Leasing was not entitled to receive the balance due under the lease.

## LEASE PROVISIONS

The lease at issue is a form contract having a term of four years. At the end of the term, the lease is automatically renewable for one year at an unspecified fair market value rental unless Building Systems gives written notice of cancellation 30 days before the expiration of the term. The first paragraph on the front page of the lease contains the following disclaimer:

"1. WARRANTY. LESSOR MAKES NO WARRANTY AS TO THE FITNESS NOR MERCHANTABILITY OF THE PROPERTY OR ANY OTHER WARRANTY WHATSOEVER. Lessor is neither manufacturer's nor vendor's agent, but is a retail purchaser. Lessee has examined the leased property or samples thereof, and he has made an examination thereof adequate to determine whether the leased property is fit for any purpose to which he may apply it. Any warranty rights, except title of Lessor, are assigned to Lessee for purposes of this lease. Any warranty claim must be asserted against vendor or manufacturer at Lessee's expense."

The lease expressly states that "[t]he parties hereto do not intend this lease to be a conditional sales agreement, chattel mortgage or security instrument...." Nevertheless, the document has substantial indicia of a secured sale, e.g., the lessee is responsible for insuring against all risks and payment of taxes, and there are default and remedy provisions governing acceleration and resale. Although there is no option to purchase in the written agreement, the parties agreed verbally that Building Systems could purchase the equipment at the end of the lease term for 10 or 15% of the cost of the equipment. Further, there is evidence that the equipment would have a value at the end of the lease term roughly equivalent to the purchase option.

In its motion for summary judgment, Building Systems argued that it was not obligated to make rental payments under the lease because (1) there was a failure of performance of the lease, (2) the essential purpose of the lease was frustrated by the computer's improper functioning, and (3) the lease was unconscionable under Article 2 of the Uniform Commercial Code, A.R.S. § 47-2302. Building Systems later argued

that it had validly revoked its acceptance of the lease pursuant to A.R.S. § 47–2608.

In granting summary judgment to Building Systems the trial court found that as a matter of law Pacific American Leasing should bear the risk of the computer system not performing. Pacific American Leasing argues on appeal that the contract was enforceable and that the risk of the computer not performing was validly allocated to Building Systems. It argues that the lease was actually a security transaction, making Article 2 of the UCC generally inapplicable. *See* A.R.S. § 47–2102. It also argues that the specific sections of Article 2 dealing with warranty, unconscionability and revocation of acceptance are inapplicable or unavailable to Building Systems in this case. Since we have concluded that the trial court erroneously entered judgment in favor of Building Systems, we will consider each of the contentions urged by it in support of the trial court's judgment.

## APPLICABILITY OF ARTICLE 2 OF THE UCC

■ Article 2 of the Uniform Commercial Code, A.R.S. § 47–2101 et seq., applies to transactions in goods "[u]nless the context otherwise requires ..." A.R.S. § 47–2102. Article 2 applies by analogy to the sales aspects of leases of goods. *Broadmont Corp. v. Fashion Floors, Inc.*, 124 Ariz. 282, 603 P.2d 553 (App.1979); *See Uniflex, Inc. v. Olivetti Corp.*, 86 A.D.2d 538, 445 N.Y.S.2d 993 (1982). As stated by the court in *Walter E. Heller & Co., Inc. v. Convalescent Home of the First Church of Deliverance*, 49 Ill.App.3d 213, 8 Ill.Dec. 823, 365 N.E.2d 1285 (1977):

" 'In view of the great volume of commercial transactions which are entered into by the device of a lease, rather than a sale, it would be anomalous if this large body of commercial transactions were subject to different rules of law than other commercial transactions which tend to the identical economic result.' *Hertz Commercial Leasing Corporation v. Transportation Credit*

*Clearing House* (N.Y.Civil Ct.1969), 59 Misc.2d 226, 229, 298 N.Y.S.2d 392, 395." 8 Ill.Dec. at 827, 365 N.E.2d at 1289.

■ Although Article 2 does not apply to a sale or contract which is "intended to operate only as a security transaction," UCC § 2–102 (A.R.S. § 47–2102) was not intended to exclude all security transactions, but only those transactions where collateral is transferred by a debtor to a creditor solely as security. *All-States Leasing Co. v. Ochs*, 42 Or.App. 319, 600 P.2d 899 (1979). UCC § 2–102 excludes those dealings designed to operate *only* as security transactions but not the *sales* aspects of a combined sales-security agreement. *Associates Discount Corp. v. Palmer*, 47 N.J. 183, 219 A.2d 858 (1966); *All-States Leasing Co. v. Ochs, supra. See generally* 2 R.A. Anderson, *Uniform Commercial Code* § 2–302:24 (3d Ed.1982). A leasing company which purchases goods and "leases" them directly to a lessee is subject to Article 2 to the extent that the lease is akin to a sale. We will apply Article 2 to the lease at issue unless the context makes a particular section inapplicable.

## FAILURE OF PERFORMANCE AND COMMERCIAL FRUSTRATION

■ Building Systems argues that it never received the use of a working computer system but only a "pile of plastic and copper." Thus it claims that there was a failure of performance on the part of Pacific American Leasing or that the essential purpose of the contract was frustrated and no duty to pay rent ever arose on the part of Building Systems. We disagree. Building Systems received precisely what it asked for, down to the model number of each component part. Building Systems argues that Pacific American Leasing promised that it would "deliver use of an operational system," citing various UCC provisions on the duty to deliver conforming goods and the right to reject nonconforming goods. *See* A.R.S. §§ 47–2503, 2512, 2513 and 2601. Assuming that the goods delivered were nonconforming,

Building Systems waived any rights it may have had pursuant to A.R.S. § 47–2601 by accepting the computer system. *See* A.R.S. §§ 47–2601 to 2607. Having accepted the goods with knowledge of whatever nonconformity Building Systems alleges to have existed, the only possible claim would be for breach of warranty. *See* A.R.S. § 47–2714.

■ Building Systems is actually arguing that, since what it asked for turned out not to be suitable to its needs, it should not now be obligated to pay for something it cannot use. This is a warranty claim and not a claim for failure of performance or commercial frustration. According to the lease, the lessee bears the risk that the computer is "fit for any purpose to which he may apply it" and "[a]ny warranty claim must be asserted against vendor or manufacturer at Lessee's expense." A waiver of claims against the lessor for nonsatisfactory condition of the leased equipment is an effective allocation of a foreseeable risk. *See Federal Leasing Consultants, Inc. v. Mitchell Lipsett Co.*, 85 Cal.App.3d Supp. 44, 150 Cal.Rptr. 82 (1978).

### REVOCATION OF ACCEPTANCE

Building Systems argues that it effectively revoked its acceptance of the computer by means of a letter sent to Pacific American Leasing approximately one year after acceptance. Pacific American Leasing argues that the remedy of revocation of acceptance is not available in this situation. It also argues that the attempted revocation was untimely. We agree.

■ Revocation of acceptance is governed by A.R.S. §§ 47–2607(B) and 47–2608. Assuming *arguendo* that these sections should be applied to a financing lease and assuming that the computer was nonconforming and that the nonconformity substantially impaired the value of the computer to Building Systems, it could have revoked its acceptance only if (1) it reasonably assumed that Pacific American Leasing would cure the nonconformity or (2) it did not discover the nonconformity before acceptance because of the difficulty

of discovery or because of Pacific American Leasing's reassurances. Neither of these bases are available to Building Systems. It had no reason to believe that Pacific American Leasing would cure the nonconformity. In fact, Building Systems did not even notify Pacific American Leasing of the nonconformity for at least a year. Instead, it looked to CSS for help with whatever difficulties it was experiencing while at the same time it reaffirmed its acceptance of the computer system and told Pacific American Leasing to disburse the remainder of the purchase price.

■ Building Systems' purported revocation of acceptance was likewise untimely. Revocation must occur within a reasonable time after discovery of the problem and is not effective until the seller is notified. Delay in revoking acceptance may be excused for several months, but only where it has been reasonably induced by reassurances of the lessor that it will cure the nonconformity. *See* A.R.S. § 47–2608; *Seekings v. Jimmy GMC*, 130 Ariz. 596, 638 P.2d 210 (1981); *Preston Motor Co. v. Palomares*, 133 Ariz. 245, 650 P.2d 1227 (App.1982). The delay in this case of more than a year, with no indication to Pacific American Leasing that there was a problem, made this revocation untimely as a matter of law. *See World Wide Lease, Inc. v. Grobschmit*, 21 Wash.App. 537, 586 P.2d 889 (1978).

### WARRANTIES

Building Systems argues that there is an implied warranty of fitness in every lease in Arizona, citing *Electrical Advertising, Inc. v. Sakato*, 94 Ariz. 68, 381 P.2d 755 (1963). *Sakato* actually says that there is an implied warranty of fitness for a particular purpose in every lease "provided the lessee has not had an opportunity to inspect the chattel and has relied upon the lessor's skill and judgment." This is precisely the standard of Article 2, which is discussed below. *See* A.R.S. § 47–2315.

Pacific American Leasing argues that warranty is the central issue in this case

and that all of Building Systems' claims are warranty claims. It also argues that there are no warranties of any kind in the lease agreement. The two potentially applicable warranties are an implied warranty of merchantability and an implied warranty of fitness for a particular purpose.

■ There is no implied warranty of merchantability unless the seller is a "merchant with respect to goods of that kind." *See* A.R.S. § 47–2314. Pacific American Leasing correctly asserts that it is not such a merchant. *See All-States Leasing Co. v. Ochs, supra. Leasco Data Processing Equipment Corp. v. Starline Overseas Corp.*, 74 Misc.2d 898, 346 N.Y.S.2d 288 (1973).

■ A warranty of fitness for a particular purpose will be implied only where the seller has reason to know of the "particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods...." A.R.S. § 47–2315. Building Systems selected the computer it wanted and told Pacific American Leasing exactly what to buy. "[N]o warranty of fitness for a particular purpose arises when it is clear that the buyer orders goods according to his own specifications." *Lewis & Sims, Inc. v. Key Industries, Inc.*, 16 Wash.App. 619, 557 P.2d 1318 (1976). Any deviation from the specific product ordered would have been rejected as nonconforming goods. *See id.* "[B]oth parties to this action knew what was desired, and that desire was fulfilled." *Id. See also Sakato, supra; All-States Leasing, supra.* Additionally, even if the fact situation had been such as to give rise to implied warranties, it is clear that they were effectively disclaimed in paragraph (1) of this lease. *See* A.R.S. § 47–2316.

## UNCONSCIONABILITY

Building Systems' final argument is that the contract is unconscionable and so, cannot be enforced. Building Systems argues that it is unconscionable for it to be required to pay rent for something it finds useless. We need not consider whether the disclaimer of warranties was unconscionable, since, as we have noted above, the circumstances surrounding this transaction did not give rise to any warranties.

■ Unconscionability is governed by A.R.S. § 47–2302. Our supreme court has said that "although a commercial purchaser is not doomed to failure in pressing an unconscionability claim, ... findings of unconscionability in a commercial setting are rare." *SRP v. Westinghouse Electric Corp.*, 143 Ariz. 368, 694 P.2d 198 (1984) (approving court of appeals opinion at 143 Ariz. 437, 694 P.2d 267, on this point). The court of appeals opinion in that case said that the UCC provisions allowing for disclaimer of warranty and limitation of liability permit merchants to negotiate and allocate unknown risks of latent defects. 143 Ariz. at 446, 694 P.2d at 276. It also stated that the fact that one party failed to negotiate a good deal does not establish unconscionability. The applicable principles are well stated in *Seekings v. Jimmy GMC, supra:*

> "The basic test [for unconscionability] is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.... The principle is one of the prevention of oppression and unfair surprise ... and not of disturbance of allocation of risks because of superior bargaining power." (Quoting official Comment 1 to UCC § 2–302). 638 P.2d at 216.

A party has a right to allocate risks by contracting to make payments regardless of future conditions. *Kintner v. Wolfe*, 102 Ariz. 164, 426 P.2d 798 (1967).

In a case very close factually to the instant case, involving the lease of a copying machine, the court in *Dillman and Associates, Inc. v. Capitol Leasing Co.*, 110 Ill.App.3d 335, 66 Ill.Dec. 39, 442 N.E.2d 311 (1982) said:

"[P]laintiff was under no compulsion to lease the equipment and could presumably have purchased it either outright or through the use of conventional financing, it chose to obtain a new copying machine by leasing one for reasons which do not appear in the record. After deciding to lease a new copier, the plaintiff was free to select the machine which would best suit its needs and circumstances.... Plaintiff now asks us to declare the lease unconscionable because it is unable to assert against the lessor claims as to the equipment's inadequacy, for which the lessor bears no responsibility whatsoever. We cannot accede to this request. Courts should not assume an overly paternalistic attitude toward the parties to a contract by relieving one or another of them of the consequences of what is at worst a bad bargain ... and in declaring the lease at issue here unconscionable, we would be doing exactly that." 66 Ill.Dec. at 45, 442 N.E.2d at 317.

*See also All-States Leasing Co. v. Top Hat Lounge, Inc.*, 198 Mont. 1, 649 P.2d 1250 (1982).

■ Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e., the contract terms per se. *See Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264 (E.D.Mich.1976); *Matter of Friedman*, 64 A.D.2d 70, 407 N.Y.S.2d 999 (1978). Building Systems does not appear to argue procedural unconscionability in the instant case. Rather, Building Systems contends that the terms of the lease agreement are unconscionable because they require Building Systems to continue making rental payments for a computer system that does not work. As authority for granting summary judgment in favor of Building Systems on grounds of unconscionability, the trial court cited *Industralease Automated & Scientific Equipment Corp. v. R.M.E. Enterprises, Inc.*, 58 A.D.2d 482, 396 N.Y.S.2d 427 (1977) and *Bank of Indiana v. Holyfield*, 476 F.Supp. 104 (S.D.Miss.1979). We find these cases unpersuasive in light of *SRP*,

*Seekings* and *Kintner*, discussed above. Additionally we distinguish these cases as representing procedural rather than substantive unconscionability. The cases cited by the trial court involved haste, pressure and inequality in the bargaining process. As noted above, in this case Building Systems argues that the lease terms themselves, rather than the bargaining process, were unconscionable.

■ An allocation of risks should not be disturbed in the absence of overreaching by the party with superior bargaining power. *Seekings, supra.* As a policy matter, no leasing company would lease equipment if it were exposing itself to potential liability for the cost of the equipment.

### CONCLUSION

Given our resolution of the above issues, we find it unnecessary to reach Pacific American Leasing's arguments with respect to the effect of the various settlement agreements entered into by the parties.

Based on the foregoing, we conclude that the trial court erred in entering judgment in favor of Building Systems on its motion for summary judgment. Further, we find that under the undisputed facts in the record, Pacific American Leasing is entitled to judgment against Building Systems for monies owing pursuant to the lease agreement, including attorney's fees incurred in the trial court. The judgment of the trial court is reversed and this matter is remanded to the trial court with directions to enter judgment in favor of Pacific American Leasing and against Building Systems and for further proceedings in accordance with this opinion.

### ATTORNEY'S FEES

Pacific American Leasing has requested attorney's fees on appeal pursuant to paragraph (4) of the lease. Pacific American Leasing is awarded its attorney's fees on appeal in an amount to be determined following submission of a statement of costs

in accordance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

SHELLEY, P.J., and KLEINSCHMIDT, J., concur.