Edward G-oodell, J.
This is a motion for summary judgment in the sum of $4,615.08 and, in addition, a counsel fee of $500 based upon an agreement between the plaintiff and the defendant described as a “ lease ” of equipment and executed by the defendant as lessee on July 16, 1968.
The incidents giving rise to this litigation began in June, 1968 when representatives of Pitney-Bowes, Inc., discussed with a representative of the defendant, a nonprofit Housing Corporation, the purchase of a No. 736 addressor-printer to be supplied by Pitney-Bowes, Inc. Two alternative methods of acquisition were presented to the defendant. One was an outright purchase and the other an arrangement described by the defendant as a lease “ for a period of five years ” at the end of which “the machine would become our property.”
The defendant alleges in its opposing affidavit that the representatives of Pitney-Bowes, Inc., stated that ‘ ‘ it would set up *1083 the machine, make the plates for same and arrange the plates by buildings for us and insert flip tabs and other identification strips, instruct our office staff how to operate the machine and also service the machine for five years.”
The items of equipment which the defendant claims it agreed to acquire were the 736 addressor-printer, 1 lister, 1-7835 12 tray nodular cabinet, 1-7961 embossing machine and “1 set of embossed plates bearing the names and addresses of defendant’s tenant-cooperators. ’ ’
The claimed source of the problem in this case is the last item, namely the embossed plates bearing the names and addresses of tenants, which the defendant alleges were not delivered to it as promised by Pitney-Bowes, Inc., with the claimed consequence that it has never been able to use the addressor-printer.
While the defendant’s negotiations were conducted with the representatives of Pitney-Bowes, Inc., when the agreement with respect to the equipment was presented to the defendant by Pitney-Bowes, the latter was not named a party to the agreement. Instead, the named contracting party in addition to the defendant was the plaintiff, a California corporation engaged in the business of leasing property with which the defendant had no prior contact. Pitney-Bowes, Inc., while not a party to the agreement was referred to in the agreement as the “ Supplier of Equipment.”
The agreement, as noted, is termed a lease, describes the plaintiff as lessor and the defendant as lessee and, provides for 60 monthly payments of “ rent ” for an “ initial term of lease ” of 60 months. The “ terms and conditions of lease ” include a disclaimer by the plaintiff of any warranty, express or implied, a disclaimer of any responsibility for improper installation or operation and provides that any claim by the lessee must be asserted against the supplier. It also requires that despite any claims against the supplier, the lessee must ‘ ‘ nevertheless pay Lessor all rents payable under the lease.” The lessor also agrees “to assign to lessee * * * all of the rights which Lessor has against Supplier for breach of warranty, or other representations respecting equipment.”
'Based on this agreement the plaintiff claims it is entitled to summary judgment for the 58 unpaid installments of ‘ ‘ rent ’ ’ and, in addition under a “ default ” provision in the agreement, the sum of $500 for attorneys’ fees incurred in connection with the enforcement of its rights under the lease.
The answer pleads a general denial, and several affirmative defenses including lack of mutuality of obligation and consid *1084 eration, breach of warranty, nnconscionability and failure of consideration and a counterclaim to recover payments made by the defendant to the plaintiff amounting to $158.
In .substance the plaintiff’s position is that it has a right to recover the unpaid balance of the installments regardless of the defendant’s claims which, the plaintiff argues, should be asserted against Pitney-Bowes.
In determining the question of whether there is merit in the defenses interposed by the defendant, consideration should be given to the provisions of article 10 of the Personal Property Law relative to retail installment sales in view of the similarity of the agreement in the present case and a ‘ ‘ retail instalment contract” as defined by subdivision 6 of section 401. There it is provided that 1 ‘ The term includes * # * a contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation for their use a sum substantially equivalent to or in excess of their value and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of the goods upon full compliance with the terms of the contract.”
In the present case the amount agreed to be paid by the defendant is substantially “ equivalent to or in excess ” of the value of the equipment since the payments provided to be made over a 60-month period are $4,740 in relation to a “ total list ” of the equipment amounting to $3,426.
The difference between the agreement here and a “ retail instalment contract ” as defined by section 401 is that the agreement in this case does not provide for the vesting of title in the defendant to the equipment upon payment of the final installment. I note, although I do not predicate my opinion on this point, that the defendant’s manager asserts in his affidavit in opposition that the representation made by Pitney-Bowes, Inc., was that the defendant would become the owner of the property at the end of the five-year period. As he avers, referring to the Pitney-Bowes representatives, “ They explained that we could purchase the machine outright or lease it for a period of five years and at the end of that time the machine would become our property.” Again, in the same affidavit he states that “ In August 1968 Franklin Plaza Apartments, Inc. decided to purchase the No. 736 Addressor-Printer on the five year plan.”
While this may raise an issue of fact as to whether the agreement in suit correctly reflects the defendant’s understanding with Pitney-Bowes, Inc. relative to the vesting of title to the *1085 equipment, the question considered here is whether, assuming that it does, there is merit in the defenses of unconscionability and failure of consideration.
Section 403 of the Personal Property Law prior to February 1, 1971 conferred upon the assignee of a retail installment contract the right to 11 cut off ’ ’ claims of the buyer, if the assignee acquired the contract in good faith, for value and without notice of facts giving rise to a defense, provided the assignee mailed a notice of the assignment to the buyer including a legend to the effect that the buyer must advise the assignee within a 10-day period of any defense he might have against the seller arising out of the sale. As .said in Coburn Corp. of Amer. v. Orr (60 Misc 2d 912, 914) “ That section of the Personal Property Law is intended to protect a bona fide assignee of an installment contract, who gives proper notice of the assignment to the buyer, against any claim or defense of the latter arising out of the sale, and is also intended to protect the buyer by affording him the opportunity to make his claim or defense known to the assignee, if, in fact, they exist.” (See, also, Chase Manhattan Bank v. McLeish (55 Misc 2d 1009.)
Chapter 299 of the Laws of 1970 amended section 403, effective as of February 1, 1971 as to contracts entered into after that date, by giving the buyer the right to assert against the assignee any claim or defense he may have arising out of the sale by way of defense or setoff and by eliminating the former 10-day limitation of time.
■Section 403 as initially adopted and as subsequently amended evince New York State’s concern about buyers who enter into retail installment contracts that are then assigned by sellers to third parties for financing or other reasons. That section is indicative of a policy increasingly designed to protect the buyer who may have a meritorious cause for complaint against a seller and yet is confronted by a demand for payment from a party with whom the buyer had no dealings, a party moreover who is customarily disinterested in any matter relative to the product other than prompt payment.
Although the contract in this case does not precisely fit the mold of a retail installment contract as defined by section 401, it presents a business pattern closely akin to the situation to which section 403 is addressed — namely, a seller here called the supplier and a buyer (the defendant) here called the lessee, who negotiated the terms of an agreement and then the interposition of a third party, here called a lessor rather than an assignee, who demands payment regardless of the buyer’s com *1086 plaints against the seller. Although title does not ultimately vest in the defendant under this contract, in a realistic, practical sense, payment is being demanded for equipment that the defendant claims it cannot use. Yet the plaintiff claims that the defendant has no recourse against it on the ground that the plaintiff does not fall into the category of an assignee under article. 10.
The statute states a standard that is a measure of unconscionability. Public policy as there expressed as well as the parallel business situation suggest that although the defendant does not have recourse to the protection provided by section 403 of the Personal Property Law, the failure of the instant agreement to contain similar provisions indicate that it is, for that reason, unconscionable.
Unconscionability arises from the inequity of compelling payment for equipment that cannot be used without the right to interpose a defense or set-off. From the point of view of the user it makes little difference that he is labeled a buyer or a lessee. In either case the agreement is unconscionable if the user must pay for something he cannot use without the right to assert a meritorious defense or set-off.
It is no longer a novelty to refer to the ‘ ‘ Unconscionable Contract or Clause ” section of the Uniform Commercial Code (§ 2-302),as a proviso that is substantially broader in application than its appearance in the article on sales would seem to indicate. It is considered to be “a barometer not only in the area of sales, but as to other types of contracts, as well as new conceptual approaches to our entire body of law.” (See article entitled New Concepts in Sales Contracts by Robert W. Malerba and Patrick J. Leddy, N. Y. L. J., Jam 9, 1969, p. 4, col. 1 and Jan. 10, 1969, p. 4, col. 1.) As .said in that article “ While section 2-302 is contained in the sales article of the Code, it is interesting to note that the section is found under Part 3 thereof ‘ General Obligation and Construction of Contracts Procedurally. ’ Section 1-201(1) makes the unconscionable contract defense applicable in any action at law or in equity, in declaratory judgment proceedings and ‘ in any proceeding in which rights are determined. ’ ”
In Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House (59 Misc 2d 226, 229 revd. on other grounds, 64 Mise 2d 910) where section 2-302 was applied to an equipment lease it was said by Judge Martin Evans that “ In view of the great volume of commercial transactions which are entered into by the device of a lease, rather than a sale, it would *1087 be anomalous if this large body of commercial transactions were subject to different rules of law than other commercial transactions which tend to the identical economic result.” (See, also, the official comment to Uniform Commercial Code, § 1-102, McKinney’s Cons. Laws of N. Y., Book 62%, Part 1, p. 5.)
The plaintiff points to the provision in the agreement pursuant to which it agrees to assign to the defendant 1 ‘ all of the rights which lessor has against supplier for breach of warranty or other representation respecting equipment.”
That remedy, in my opinion is inadequate and illusory.
It is inadequate, in my view, for the reason that the defendant would be obligated to pay the entire debt in full and then seek to recoup its loss by resort to a cause of action against the “supplier”. If, despite the absence of a written agreement between “ supplier ” and “ lessee ”, the “ lessee ” should ultimately establish its cause of action against the “ supplier ” and collect a judgment against the latter, a period of time would have intervened between payment of the plaintiff’s claim and collection of the defendant’s judgment — obviously prejudicial since the defendant in the interim, if credence be given to his claim, does not have the use of the equipment.
It is illusory because the moving papers do not give any indication as to the representations or warranties claimed to have been given by Pitney-Bowes to the plaintiff and, in addition, there is no indication, if representations or warranties were made by Pitney-Bowes to the plaintiff, whether they are the representations and warranties that the defendant claims were made to it and upon which it claims to have relied.
The question may well be asked in this connection with reference to the provision for assignment in the lease, what compelling necessity dictated the failure to incorporate into the agreement the representations and warranties made by Pitney-Bowes other than the desire to place the defendant in a position vis-a-vis the plaintiff in which defenses would be disassociated and payment would be isolated from any connection with representations or warranties made by Pitney-Bowes.
Moreover, such an assignment would not be adequate to cover the defendant’s claim of failure of consideration. It should be noted here that the items of equipment listed in the lease do not include the embossing plates, the failure to supply which is the basis of the defendant’s claim that is is unable to use the equipment.
Subdivision (2) of section 2-302 of the Uniform Commercial Code provides that where it is claimed or appears that the con *1088 tract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.
A trial in my opinion is the appropriate method of disposing of the issues in this case.
Accordingly, the plaintiff’s motion for summary judgment is denied.