TOLARAM FIBERS, INC. v. TANDY CORPORATION AND TANDY ELEC-
TRONICS, INC.

No. 8820SC540

(Filed 7 February 1989)

1. Courts § 21.7— last act creating lease executed in Texas—Texas law governs

Texas law governed this case involving the lease of computer equipment and software since the last act involving the lease, the signing by one of defendant's representatives at defendant's home office in Fort Worth, took place in Texas; moreover, the lease documents explicitly stated that Texas law was to govern the agreements, and N.C.G.S. § 25-1-105(2) provides that parties may agree that the law of a state bearing a "reasonable relation" to the transaction shall govern the parties' rights and duties.

2. Uniform Commercial Code § 3— lease of computer equipment—warranties of U.C.C. inapplicable

Under Texas law which was applicable to this case, the relationship entered into between defendants and plaintiff was that of lessor and lessee, and the lease of computer equipment and software was outside the scope of the warranty provisions of Article 2 of the U.C.C.

**3. Attorneys at Law § 7— entitlement to attorney fees—Texas law governs**

The issue of a party's entitlement to attorney fees is a question of substantive law, and this issue was therefore determined by the law of Texas, the state where the last act to make a binding contract occurred.

**4. Attorneys at Law § 7— attorney fees properly denied**

The trial court did not err in denying defendants attorney fees where the language of the parties' lease could be read so as to provide defendants with a choice of remedies, only one of which called for attorney fees, and the trial court could have concluded that defendants did not pursue the remedy which provided attorney fees; furthermore, the prayer for relief in defendants' counterclaim did not explicitly ask for attorney fees.

APPEAL by plaintiff, cross-appeal by defendants, from *William H. Helms, Judge.* Judgment entered 27 January 1988 in Superior Court, ANSON County. Heard in the Court of Appeals 8 December 1988.

*Taylor and Bower by H. P. Taylor, Jr. for plaintiff-appellant/ cross-appellee.*

*Leath, Bynum, Kitchin, and Neal, P.A., by Henry L. Kitchin and Stephan R. Futrell for defendant-appellants/cross-appellees.*

BECTON, Judge.

In this lease contract dispute, plaintiff, Tolaram Fibers, Inc., alleges that defendants, Tandy Corporation and Tandy Electronics, Inc., breached express and implied warranties when they leased a computer system to plaintiff. At the close of plaintiff's evidence, the trial court directed a verdict in favor of defendants on their counterclaim for rental amounts due under the lease, for interest, and for a collection fee. The court denied defendants' request that they be awarded attorney fees. From the judgment directing a verdict in favor of defendants, plaintiff appeals. From the denial of attorney fees, defendants appeal. We affirm.

I

Tolaram Fibers ("Tolaram") is a North Carolina corporation with its principal place of business in Anson County. The corporation produces synthetic yarn and fabrics. The defendants are foreign corporations, domesticated to do business in this State. Tandy Corporation uses "Radio Shack" as its brand name and is a vendor of computer hardware and software. Tandy Electronics

leases computer hardware and software. Tolaram alleges that Tandy Corporation is the parent company of Tandy Electronics; defendants contend that the two are separate business entities. We express no view on this question.

In 1984, Tolaram needed a computer system that would be capable of rapidly processing inventory information. Essentially, Tolaram wanted a system that could store information about yarn shipments and print a corresponding bill of lading. A system Tolaram then had in use was unable to perform these functions quickly enough.

According to Tolaram, Burke Wallace Fox, Jr., Tolaram's controller, went to a Radio Shack store in Charlotte after reading Tandy Corporation literature. He met there with Patricia Gregory, a salesperson for Tandy Corporation. Tolaram alleges that Mr. Fox explained Tolaram's computer needs in detail to Ms. Gregory. Mr. Fox testified that Ms. Gregory recommended that Tolaram acquire Radio Shack's Profile 16 management program. He and Ms. Gregory had several more conversations, and Ms. Gregory at one point brought in Scott Walker, an independent computer programmer, to talk to Mr. Fox. Mr. Fox testified that Mr. Walker also said that the Profile 16 program would satisfy Tolaram's requirements. The evidence at trial unequivocally showed that Mr. Fox understood from Ms. Gregory and Mr. Walker that the new system would need expert programming in order to perform all of the functions Tolaram desired.

Tolaram alleges that based on Ms. Gregory's recommendations, on Mr. Walker's assurances, and upon Tandy Corporation advertising that suggested the Profile 16 program was "easy to use," it entered into a leasing contract with Tandy Electronics. Tolaram acquired two Radio Shack Model 16B computers, two printers, two data terminals, other hardware, Profile 16 software, and other software. The total lease price was $18,600, to be paid over 37 months and coupled with an initial deposit for the balance. On behalf of Tolaram, Mr. Fox signed two lease documents on 19 October 1984. Paragraph 19 of each document provided that the lease would not take effect until signed by a Tandy Electronics representative at Tandy's home office in Fort Worth, Texas. The paragraph also specified that, except for local filing requirements, Texas law was to govern the agreement. Defend-

ants contend that after Mr. Fox signed the lease applications, they were forwarded to Fort Worth and signed there by a vice-president of Tandy Electronics on 7 November 1984. Tolaram does not dispute this contention.

In June 1985, Tolaram ceased making rental payments on the computer system. Tolaram says it found the Profile 16 program to be unsatisfactory for three reasons. First, Tolaram alleges the new system could not perform any faster than could the one it replaced. In addition, Tolaram says it was not able to use the Profile 16 program from remote terminals; in other words, only the main unit could be used to run the program. Finally, Tolaram contends that Profile 16 is a very difficult program to use. The evidence at trial showed that Mr. Fox at first attempted to program the new computers himself and that Tolaram never hired an expert to adapt the system to meet Tolaram's needs.

Tolaram sued defendants after it offered to exchange the computers for a different system, but defendants refused. Defendants counterclaimed, praying specifically for the balance owing them under the lease agreements, and praying generally for "such other and further relief as the defendants may be entitled. . . ."

II

Tolaram assigns error to the trial court's directing a verdict against it on its claim of breach of the lease agreement. A directed verdict is not properly allowed unless it appears, as a matter of law, that plaintiff cannot recover upon any view of the facts reasonably established by the evidence. N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 50 (1983); *Manganello v. Permastone, Inc.*, 291 N.C. 666, 670, 231 S.E. 2d 678, 680 (1977). When this Court considers the sufficiency of evidence to withstand a motion for directed verdict, we view the evidence in the light most favorable to the nonmoving party. *Wilson v. Bob Robertson's Auto Service, Inc.*, 20 N.C. App. 47, 49, 200 S.E. 2d 393, 395-96 (1973).

Tolaram contends defendants breached implied warranties of merchantability and fitness, and that defendants breached express warranties that the computers would perform the tasks Tolaram desired in the manner it desired. As a threshold matter, we must determine whether the rights of these parties should be determined under the laws of this State or of Texas.

[1] Under North Carolina law, the substantive law of the state where the last act to make a contract occurs governs all aspects of the contract. *See Tanglewood Land Co., Inc. v. Wood*, 40 N.C. App. 133, 136, 252 S.E. 2d 546, 550 (1979). The evidence in this case indicates that the last act involving this lease took place in Texas. Moreover, the lease documents explicitly stated that Texas law was to govern the agreements. N.C. Gen. Stat. Sec. 25-1-105(1) (1986) provides that parties may agree that the law of a state bearing a "reasonable relation" to the transaction shall govern the parties' rights and duties. Therefore, we shall resolve this appeal by looking to the law of Texas.

[2] On appeal, Tolaram has argued its case chiefly under the warranty provisions of Article 2 of the Uniform Commercial Code. Texas has adopted the Code, and the warranty provisions in question are codified at Tex. Bus. & Com. Code Ann. Secs. 2.313, 2.314 and 2.315 (Vernon 1968). Tolaram has invited this Court to hold that the warranty provisions of Article 2 are applicable to the transactions involved in this case. We decline to so hold.

We agree with defendants that under Texas law, Article 2 of the Uniform Commercial Code does not apply to leases of personal property. *See U.S. Armaments Corp. v. Charlie Thomas Leasing Co.*, 661 S.W. 2d 197, 200 (Tx. Ct. App. 1983). Tolaram, however, asserts that this transaction, though denominated a lease, was the functional equivalent of a sale of the computer system. Thus, Tolaram maintains that Article 2 is applicable. We reject this argument.

Paragraph 6 of the lease terms and conditions states that Tolaram received no "right, title or interest in or to the Equipment." The documents further specified that at the end of the leasing period Tolaram was to return the computer system to Tandy Electronics. In *Armaments*, the lessee asserted, as does Tolaram, that a lease contract was, in fact, a purchase agreement. The Court said, "There is nothing in the agreement to indicate or suggest a sale of the described property, an option to purchase, or anything other than a lease of the listed property." 661 S.W. 2d at 200 (quoting *Three Bears, Inc. v. Transamerican Leasing*, 574 S.W. 2d 193, 198 (Tx. Civ. App. 1978) ). Similarly, we find nothing in the agreement between Tolaram and defendants to indicate that their transaction was, in effect, a sale. We hold, therefore, that under Texas law the relationship entered into between de-

fendants and Tolaram was that of lessor and lessee and that the lease in this case was outside the scope of the warranty provisions of Article 2 of the Uniform Commercial Code.

Tolaram argues that as a matter of public policy lessors such as defendants should be responsible for providing their customers with goods that operate as warranted. Tolaram seems to be asking this Court to fashion from Texas law an equitable remedy and to do so by applying Article 2. We have carefully reviewed the record, and we do not find in the facts of this case an offense to public policy. To begin with, even when the evidence is considered in the light most favorable to Tolaram, we cannot conclude that any express or implied warranties were created by the lease agreement. The lease documents explicitly waived all warranties and provided that Tolaram was to accept the equipment "as is." Moreover, the evidence clearly showed that Tolaram understood that an expert would be needed to program the system so as to fulfill Tolaram's requirements. Rather than hire the expert, Mr. Fox tried to program the system. Tolaram does not appear to us to have been the victim of any duplicity by defendants, and thus we reject the policy argument advanced by Tolaram.

III

[3]  Defendants assign error to the trial court's denial of attorney fees. Once again, we must first determine whether Texas or North Carolina law governs this issue. As we observed above, the substantive law of contracts is governed by the law of the state where the last act to make a binding contract occurs. *Tanglewood Land Co.*, 40 N.C. App. at 136, 252 S.E. 2d at 550. North Carolina law resolves questions of procedure. *Id.* We hold that the issue of a party's entitlement to attorney fees is a question of substantive law, and thus we will look, once more, to the law of Texas.

[4]  The allowance of attorney fees is discretionary under Texas law. *See Rampy v. Rampy*, 432 S.W. 2d 175, 177 (Tx. Civ. App. 1968); *see also Caldwell & Hurst v. Myers*, 714 S.W. 2d 63, 65-66 (Tx. Ct. App. 1986) (trial court abuses discretion by denying award of attorney fees if party asserts claim and requests payment in accordance with statutory procedures). Defendants contend that the lease agreements explicitly called for Tolaram to pay attorney fees in the event defendants had to utilize legal avenues to collect deficiencies under the lease. In our view, the

lease language can be read so as to provide defendants with a choice of remedies, only one of which calls for attorney fees. The trial court could have concluded that defendants did not pursue the remedy that provided attorney fees. Furthermore, the prayer for relief in defendants' counterclaim does not explicitly ask for attorney fees. We do not find, therefore, an abuse of discretion by the trial court, and we overrule this assignment of error.

## IV

The judgment of the trial court directing a verdict in favor of defendants and denying an award of attorney fees to defendants is

Affirmed.

Judges WELLS and JOHNSON concur.