COASTAL LEASING CORPORATION, PLAINTIFF v. EPHRAIM N. O'NEAL, D/B/A CAPE HATTERAS SEAFOOD, AND COASTAL REFRIGERATION CO., INC., DEFENDANTS

No. 903SC63

(Filed 18 June 1991)

1. **Uniform Commercial Code § 3 (NCI3d) — lease of ice-making equipment — U.C.C. warranties — applicable**

   The trial court erred by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) a crossclaim by a lessee against an equipment supplier in an action against the lessee to recover the balance due on an equipment lease. Although the seller, Coastal Refrigeration, contended that the warranty provisions of Article 2 of the U.C.C. do not apply, there was a sale of equipment by Coastal Refrigeration to Coastal Leasing, the lessor; Coastal Refrigeration was made a party to the suit; and the lease clearly distinguishes the three parties to the transaction and directed O'Neal, the sole intended user, to seek relief exclusively from the seller. N.C.G.S. §§ 25-2-101 *et seq.*; N.C.G.S. § 25-2-316(2); N.C.G.S. § 25-1-201(37).

   **Am Jur 2d, Sales §§ 28, 37, 707, 908 et seq.**

2. **Uniform Commercial Code § 10 (NCI3d) — leased equipment — warranties — privity between lessee and supplier**

   A crossclaim by a lessee of ice-making equipment against the supplier of the equipment was not barred by lack of privity where the lessee, O'Neal, alleged that he directly negotiated a purchase with the seller, Coastal Refrigeration. The seller was anything but remote from the user.

   **Am Jur 2d, Sales §§ 708, 720.**

3. **Uniform Commercial Code § 15 (NCI3d) — leased equipment — crossclaim against supplier — disclaimers in lease — not applicable**

   Warranty disclaimers in a lease were immaterial to a crossclaim by the lessee against the supplier of the equipment where the disclaimer language applied to the lessee alone and referred the lessee to the seller-supplier for any claims involving defects or breach of warranties.

   **Am Jur 2d, Sales §§ 822 et seq.**

COASTAL LEASING CORP. v. O'NEAL

[103 N.C. App. 230 (1991)]

4. **Uniform Commercial Code § 10 (NCI3d) — leased equipment — breach of warranties — allegation of defects — sufficient**

Allegations in a crossclaim for defects in leased ice-making equipment were sufficient to raise the inference that any defects in the equipment existed at the time of sale.

**Am Jur 2d, Sales §§ 1280, 1282, 1285.**

APPEAL by defendant O'Neal, from order entered 3 November 1989 by *Judge William C. Griffin, Jr.,* in PITT County Superior Court. Heard in the Court of Appeals 28 August 1990.

*Everett, Everett, Warren & Harper by C. W. Everett, Jr., and Scott W. Warren, for defendant-appellant Ephraim N. O'Neal, d/b/a Cape Hatteras Seafood.*

*James M. Roberts for defendant-appellee Coastal Refrigeration Co., Inc.*

PARKER, Judge.

Plaintiff lessor, Coastal Leasing Corporation (herein "leasing company" or "lessor"), instituted this action against its lessee, Ephraim N. O'Neal (herein "O'Neal" or "lessee"), to recover the balance due on an equipment lease covering an Arctic Temp 1000 AR-6 Ice Maker and a 10 HP Copeland Condensing Unit sold to leasing company by Coastal Refrigeration Co., Inc. (herein "Coastal Refrigeration" or "seller"). O'Neal moved under Rule 19(b) of the North Carolina Rules of Civil Procedure to add Coastal Refrigeration as a defendant in the action and to be permitted to file a crossclaim against Coastal Refrigeration. The trial court granted O'Neal's motion. Coastal Refrigeration answered the crossclaim and moved for dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6). O'Neal appeals from the dismissal of his crossclaim. Final judgment for plaintiff has also been entered in the primary action, but is not before the Court on this appeal.

In order to survive a Rule 12(b)(6) motion, O'Neal needed only to have alleged facts that stated a claim under some cognizable legal theory. *Stanback v. Stanback,* 297 N.C. 181, 254 S.E.2d 611 (1979).

In general, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled

to no relief under any state of facts which could be proved in support of the claim." [297 N.C.] at 185, 254 S.E.2d at 615, *quoting* 2A Moore's Federal Practice, § 12.08, pp. 2271-74 (2d ed. 1975).

*Harris v. NCNB*, 85 N.C. App. 669, 670-71, 335 S.E.2d 838, 840 (1987) (emphasis omitted). For the reasons stated herein, O'Neal's crossclaim was sufficient to raise the issue of his entitlement to relief. We, therefore, reverse.

O'Neal and Coastal Refrigeration dispute the applicability of the warranty provisions of Article 2 of the Uniform Commercial Code, N.C.G.S. §§ 25-2-101 *et seq.*, to this arrangement, which provided for the leasing company to obtain title from Coastal Refrigeration only after O'Neal had personally selected the equipment from the seller and then authorized its purchase by the leasing company. O'Neal seeks recovery of expenses incurred as a result of the alleged malfunctioning of the icemaking equipment, including the deficiency balance owed to the leasing company after public sale of the equipment and expenses incurred for (i) substitute equipment, (ii) large quantities of ice on the open market to protect seafood from spoilage and (iii) legal fees.

In the primary suit, judgment was entered awarding plaintiff the unpaid balance due under the lease plus interest and attorney's fees. Under the terms of that lease, failure of the equipment to operate properly was not a defense to O'Neal's liability to pay the lessor for the entire lease term. Therefore, O'Neal does not appeal the judgment in favor of the leasing company. Other terms of the lease, however, are material to our disposition of the dispute between O'Neal and Coastal Refrigeration.

The lease was attached to the lessor's complaint and was cross-referenced in O'Neal's crossclaim; the record shows that the original complaint was served on Coastal Refrigeration at the same time the crossclaim was served. The lease explicitly names Coastal Refrigeration as the supplier-seller to the lessor of the ice maker and a condensing unit, which are the subject matter of the equipment lease. Paragraph 2 describes particular transactional facts as well as the rights and liabilities of the parties to the lease.

PURCHASE AND ACCEPTANCE: NO WARRANTIES BY LESSOR: Lessee requests Lessor to purchase the Equipment from a seller (the "Seller") and arrange for delivery to Lessee at Lessee's ex-

COASTAL LEASING CORP. v. O'NEAL

[103 N.C. App. 230 (1991)]

pense . . . . THE LESSEE REPRESENTS THAT LESSEE HAS SELECTED THE EQUIPMENT LEASED HEREUNDER PRIOR TO HAVING RE- QUESTED THE LESSOR TO PURCHASE THE SAME FOR LEASING TO THE LESSEE, AND LESSEE AGREES THAT THE LESSOR HAS MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING THE SUITABILITY OF SUCH EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PAR- TICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, AND/OR ITS QUALITY . . . . NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE SELLER SHALL BE BINDING ON THE LESSOR . . . . If the Equipment is not prop- erly installed, does not operate as represented or warranted by the Seller or is unsatisfactory for any reason, Lessee shall make any claim on account thereof solely against the Seller . . . . Lessor agrees to assign to Lessee, solely for the purpose of making and prosecuting any such claim, any rights it may have against the Seller for breach of warranty or representa- tion respecting the Equipment.

For purposes of review of the trial court's disposition of a motion to dismiss for failure to state a claim, this Court treats O'Neal's well pleaded factual allegations as admitted. *Warren v. Halifax County*, 90 N.C. App. 271, 368 S.E.2d 47 (1988). The prin- cipal factual allegations in the crossclaim are as follows. According to the crossclaim O'Neal "negotiated the purchase" of an ice maker and a condensing unit from Coastal Refrigeration for a purchase price of $12,500.00; the supplier suggested and was instrumental in arranging for a lease transaction in lieu of a sale. O'Neal argues in his brief that he relied on "the supplier's expertise in selecting an ice machine sufficient and satisfactory for his business needs."

The crossclaim states that the equipment did not operate prop- erly and O'Neal contacted Coastal Refrigeration repeatedly to have the company try to fix the problem. O'Neal further alleged that the supplier either ignored his requests for service or failed in its attempts to get the icemaking equipment to work properly, despite the fact that Coastal Refrigeration "had agreed to service said equipment." As a consequence, O'Neal alleged, the ice maker and compressor did not "perform as expressly and impliedly war- ranted" and O'Neal "could not use [the equipment] in the capacity for which it was purchased."

O'Neal ceased making the required installment payments under the lease after about seven months because of allegedly unsatisfactory servicing and repair by Coastal Refrigeration. O'Neal then requested that the ice maker be removed from his business premises. Coastal Refrigeration later re-purchased the equipment at a public sale held by the leasing company. The crossclaim alleged that as acquiring bidder Coastal Refrigeration knew that the equipment had been "unsuited for the purposes for which [O'Neal had explained he] intended to use said equipment" and that Coastal Refrigeration's low bid resulted in the large deficiency owed to the lessor. The crossclaim prayed recovery "for monies expended and paid" by O'Neal "by virtue of the defective condition of said equipment and the breach of the express warranty and the implied warranty of merchantability issued by . . . Coastal Refrigeration" to the lessor "for which this defendant [O'Neal] is a third party beneficiary."

[1] Defendant Coastal Refrigeration argues that (i) this Court held in *Tolaram Fibers, Inc. v. Tandy Corp.*, 92 N.C. App. 713, 375 S.E.2d 673, *disc. rev. denied*, 324 N.C. 436, 379 S.E.2d 249 (1989), that the warranty provisions of N.C.G.S. §§ 25-2-101 *et seq.* (herein "Article 2" or "UCC") do not apply to a lease of this type; (ii) even if the warranty provisions of Article 2 apply to this transaction, O'Neal is barred by an alleged lack of privity with Coastal Refrigeration from asserting any breach of warranty claims against it; (iii) even if O'Neal is not barred by the absence of privity, the lease disclaims all warranties; and (iv) O'Neal's crossclaim is deficient for its failure to allege that the equipment was defective at the time of sale. We disagree with all of these contentions.

We address each contention in turn. Coastal Refrigeration erroneously analogizes this case to *Tolaram Fibers*. In *Tolaram Fibers* this Court rejected a lessee's argument that its lease "was the functional equivalent of a sale" of certain computer equipment. 92 N.C. App. at 717, 375 S.E.2d at 675. Although O'Neal raises the same argument in this appeal, we do not reach the issue for several reasons. In *Tolaram Fibers* there was no consummated sale, as there is in this case, bringing the equipment within the purview of Article 2 of the UCC. Further, unlike in *Tolaram Fibers*, where both the lease and the Court characterized the parties as "lessee" and "lessors," in the present case the seller-supplier has been made a party to the suit. Finally, unlike the lease in *Tolaram Fibers*, the lease in the present case clearly distinguishes and identifies three parties to this commercial financing transaction: lessor

COASTAL LEASING CORP. v. O'NEAL

[103 N.C. App. 230 (1991)]

(Coastal Leasing Corporation), lessee (O'Neal) and supplier-seller (Coastal Refrigeration). Rather than denying O'Neal the right to proceed against Coastal Refrigeration for supplying defective equipment or for improperly representing the capabilities of the equipment during alleged negotiations with O'Neal, the lease terms clearly directed O'Neal, the sole intended user of the equipment, to seek relief exclusively from the seller of the equipment.

Relevant sections of the UCC clearly make the Code apply to the phase of the transaction involving the leasing company and Coastal Refrigeration. N.C.G.S. §§ 25-2-101 *et seq.* (1986). Plaintiff in the primary suit was clearly a "buyer" under N.C.G.S. § 25-2-103(1)(a). The leasing company "purchased" the equipment as that verb is defined by N.C.G.S. §§ 25-1-201(32) and (33). Not only was Coastal Refrigeration a "seller" under N.C.G.S. § 25-2-103(1)(d) but it may also qualify as a "merchant" under the definition of that term in N.C.G.S. § 25-2-104(1), imposing on it the obligation that its goods conform to the implied warranty of merchantability, absent an exclusion of such a warranty meeting the requirements of N.C.G.S. § 25-2-316(2).

Moreover, this particular tripartite financing arrangement is not the type expressly excluded from the provisions of Article 2 of the UCC for the reason that the leasing company is not a financing agency as defined by N.C.G.S. § 25-2-104(2) holding a security interest as defined by N.C.G.S. § 25-1-201(37). Given O'Neal's allegations of active negotiations with Coastal Refrigeration, which allegations are supported by the language of the lease, O'Neal was also not a "stranger" to the contract for sale of goods between Coastal Refrigeration and the leasing company.

> In view of the fact that a sale is the transfer of title for a price, the transfer of title phase of the transaction may take place and may be between different parties than the parties to the offer and acceptance phase of the transaction.

2 *Anderson on the Uniform Commercial Code, Sales* § 2-206:4, at 248 (3d ed. 1982) (footnote omitted).

[2] Similarly, we are unpersuaded by Coastal Refrigeration's second argument that lack of privity bars O'Neal from bringing his crossclaim against it. O'Neal alleged that he directly negotiated a purchase with the seller. In this three-party transaction, the seller was anything but "remote" from the user. Remoteness be-

tween parties, and its consequent potential for surprise by a party unrelated to the immediate transaction, are thus not pertinent issues under the facts in this case.

"North Carolina's Uniform Commercial Code does not define 'privity' and there are no governing Code provisions dispositive of this issue." *Sharrard, McGee & Co. v. Suz's Software, Inc.,* 100 N.C. App. 428, 432, 396 S.E.2d 815, 817 (1990).

> Whether there exists such a [privity] requirement is not governed by the UCC, but by developing case law. As stated by the Court in *Kinlaw,* "Our jurisdiction's allegiance to the principle of privity has, at best, wavered." 298 N.C. at 497, 259 S.E.2d at 555 [1979]. The Court in *Kinlaw* went on to hold that where a plaintiff alleges an express warranty running directly to him, breach of that warranty, and damages caused by the breach, the absence of an allegation of privity between plaintiff and warrantor in the sale of the warranted item is not fatal to the claim.

*Bernick v. Jurden,* 306 N.C. 435, 448-49, 293 S.E.2d 405, 414 (1982).

In the present case, O'Neal alleged express and implied warranties flowing to him as third-party beneficiary of the equipment sales contract, breach of those warranties and damages. "If the third party is an intended beneficiary, the law implies privity of contract." *Johnson v. Wall,* 38 N.C. App. 406, 410, 248 S.E.2d 571, 574 (1978); *see also Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 79 N.C. App. 81, 85-87, 339 S.E.2d 62, 65-66 (1986), *aff'd in part and rev'd in part,* 322 N.C. 200, 367 S.E.2d 609 (1988) (but declining to rule on Court of Appeals' holdings on third-party beneficiary claims). Further, O'Neal has the right to try to prove that the seller's direct representations to him, in addition to any express or implied warranties to the lessor, formed part of the "basis of the bargain" for purposes of triggering remedies for breach of express warranty. *Sharrard,* 100 N.C. App. at 433, 396 S.E.2d at 818.

Our conclusion that O'Neal has a cognizable claim against Coastal Refrigeration is consistent with the clear and unambiguous language in the lease putting O'Neal on notice that "[a]ll complaints and redress for breach of warranty or misrepresentations were to be directed to and against the vendor" rather than against the warranty-disclaiming lessor. *Petroziello v. United States Leasing Corp.,* 176

COASTAL LEASING CORP. v. O'NEAL

[103 N.C. App. 230 (1991)]

Ga. App. 858, 861, 338 S.E.2d 63, 66 (1985) (declining to permit lessee to sue lessor in a similar lease arrangement). Our conclusion is also consistent with that of other courts and commentators discussing express warranties in the context of inducement. *See, e.g., United States Leasing Corp. v. Franklin Plaza Apts.*, 65 Misc. 2d 1082, 1086, 319 N.Y.S.2d 531, 535 (1971) ("[a]lthough title does not ultimately vest in the defendant under this [lease] contract, in a realistic, practical sense, payment is being demanded for equipment that the defendant claims it cannot use" for the purposes for which it was induced to obtain the equipment); 3 *Williston on Sales* § 17-5, at 12 (4th ed. 1974) ("single most important decision" for purposes of court's finding creation of express warranty "is whether the seller's statements were so regarded by the buyer as part of his reason for purchasing the goods").

[3] Coastal Refrigeration's third argument asserting the lessor's disclaimer of all warranties in the lease is immaterial. The disclaimer language applies to the lessor alone and refers the lessee to the seller-supplier for any claims involving defects or breach of warranties. Unquestionably, under the explicit terms of the lease quoted above the leasing company's disclaimer of warranties as against its lessee were effective. O'Neal's crossclaim, however, is not against his lessor but rather against the seller-supplier who is named and otherwise specifically referred to in various sentences of the lease. Coastal Refrigeration does not even argue that it attempted to disclaim, limit or modify warranties as to either O'Neal or the leasing company.

[4] Coastal Refrigeration's final argument that O'Neal failed to allege the existence of defects at the time of sale is likewise unsuccessful. The allegations in the crossclaim were sufficient to raise the inference that any defects in the equipment existed at the time of sale. 3 *Anderson on the Uniform Commercial Code, Sales* § 2-314:196, at 280 & n.18 (3d ed. 1983 & Cum. Supp. 1990) ("operative facts in a warranty action may be established by circumstantial evidence"); 67A Am. Jur. 2d *Sales* § 789 & nn.48-49 (1985).

In conclusion we note that financing transactions functionally identical to the one now before this Court have been similarly viewed by courts in other jurisdictions. In *World Wide Lease, Inc. v. Grobschmit*, 21 Wash. App. 537, 586 P.2d 889 (1978), *rev. denied*, 91 Wash. 2d 1023 (1979), for example, a leasing company sued its lessee, the operator of a supermarket, for unpaid rental

amounts on an automatic ice vending machine. Defendant lessee crossclaimed against the distributor who had sold the machine to the lessor, alleging breach of express and implied warranties. The appellate court quoted the oral opinion of the trial judge in describing the special relationship of the three parties. The facts giving rise to that relationship in *World Wide Lease* present a business pattern replicated in the case now before this Court.

> [In] the relationships of the parties this was not anything other than a device, a financing tool whereby [lessee] acquired the use of this machine. When [lessors] purchased the machine they, for all practical purposes, did so on behalf of and as agent for [lessee]. They didn't make the selection of the machine. They didn't negotiate price; they had nothing to do with the prior negotiations . . . . Any warranties, any obligations that [seller] had ran right through [lessors] and did in fact inure to the benefit of [lessee].

*Id.* at 541, 586 P.2d at 892.

In agreeing with that part of the trial court's analysis, the appellate court in *World Wide Lease* also observed that the sales price offered to lessee originally was the same as the price at which the leasing company then purchased the equipment, reinforcing the analysis of the lessor's role as a middleman used for purposes of financing. *Id.* at 542-43, 586 P.2d at 893. O'Neal's crossclaim alleged that Coastal Refrigeration had quoted him a purchase price of $12,500.00 for the equipment he later leased for a total of about $17,000.00, amortized over a three-year term. *See also United States Leasing Corp. v. Franklin Plaza Apts.*, 65 Misc. 2d 1082, 319 N.Y.S.2d 531 (1971) (lessee had valid claim against supplier-seller under following facts: seller with whom ultimate user negotiated offered user choice between outright purchase and long-term lease; user opted for lease; party named in user's lease agreement, however, was not seller but rather an interposed leasing corporation, with whom user had had no previous contact; seller was not a party to lease agreement but was referred to as "supplier" of the equipment therein).

For the foregoing reasons, O'Neal stated a cognizable claim against Coastal Refrigeration and had the right to go forward with evidence supporting the allegations in his crossclaim.

Reversed and remanded.

Judges JOHNSON and PHILLIPS concur.