MOORE PRINTING, INC., Plaintiff v. AUTOMATED PRINT
SOLUTIONS, LLC, Defendant

No. COA11-308

(Filed 1 November 2011)

**1. Uniform Commercial Code—lease of printer—document insufficient—not enforceable**

The trial court did not err by granting summary judgment for defendant in a dispute over a leased high-speed commercial printer where there was no issue of fact as to whether a contract existed between plaintiff and defendant. The document cited by plaintiff as a firm offer under the Uniform Commercial Code was not signed by defendant and was insufficient to form an enforceable lease.

**2. Leases of Personal Property—privity—lease of printing equipment**

There was no implied privity of contract between plaintiff and defendant through plaintiff's lease of commercial printing equipment with Wells Fargo where the equipment was demonstrated to plaintiff by defendant, defendant provided the specifications and a proposed lease agreement to plaintiff, and defend- ant signed a separate maintenance agreement with defendant. Defendant was not mentioned in the lease agreement, the lease named another company as the supplier-seller of the equipment, and the company named as the supplier-seller was not mentioned in plaintiff's suit.

MOORE PRINTING, INC. v. AUTOMATED PRINT SOLUTIONS, LLC

[216 N.C. App. 549 (2011)]

### 3. Warranties—leased equipment—party proposing sale—not a party to lease

The trial court did not err by granting summary judgment for defendant in an action involving leased printing equipment where plaintiff contended that defendant had made actionable warranties, but the written contract between plaintiff and defendant was only for printer maintenance and supplies. Any redress under warranties from the supplier-seller would be not be owed by defendant.

### 4. Discovery—summary judgment before end of discovery—no prejudice

Plaintiff did not show prejudice where summary judgment was granted before the discovery period was complete. Plaintiff did not seek additional information through discovery prior to the order granting summary judgment and did not allege evidence that might have been produced before the end of the discovery period.

### 5. Leases of Personal Property—rescission—parties

It was not possible to rescind a lease for commercial printing equipment for breach of warranties where the company that presented the proposal for the equipment was not a party to the lease and the company listed on the lease agreement was not a party to the suit. There was no contract between plaintiff and defendant from which plaintiff would be entitled to warranties for the printer's performance.

### 6. Unfair Trade Practices—lease of commercial printer—lease not required—performance observed before lease

There was no unfair or deceptive trade practice in the lease of a commercial printer where plaintiff was encouraged to lease rather than purchase the equipment but was not forced to sign the lease agreement, and plaintiff's president observed a demonstration of the equipment in which it did not work satisfactorily but attributed the problem to user error and did not further confirm the quality or performance of the printer.

### 7. Uniform Commercial Code—nonconforming good—cure—defendant not the seller

The trial court did not err by granting summary judgment for defendant on its counterclaim for ink and maintenance in a dispute over a leased printer where plaintiff contended that defendant's attempts to resolve the printing problems were attempts to

MOORE PRINTING, INC. v. AUTOMATED PRINT SOLUTIONS, LLC

[216 N.C. App. 549 (2011)]

cure a nonconforming good. Defendant was not a party to the lease agreement, but merely had an agreement for maintenance and supplies. Assuming that the printer was a nonconforming good, defendant was not the seller of the printer.

Appeal by plaintiff from order entered 23 November 2010 by Judge Timothy S. Kincaid in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 September 2011.

*John F. Hanzel, P.A., by John F. Hanzel, for plaintiff-appellant.*

*H.M. Whitesides, Jr., for defendant-appellee.*

HUNTER, Robert C., Judge.

Plaintiff Moore Printing, Inc. ("Moore Printing") appeals from the trial court's order granting defendant Automated Print Solutions, LLC's ("APS") motions for summary judgment. After careful review, we affirm.

## Background

This case stems from a dispute regarding the lease of a high-speed commercial printer by Moore Printing, a printing company located in Lincolnton, North Carolina. APS is a Charlotte-based company "dedicated to the sales and service of the Riso line of digital printing products." APS performed a demonstration of a Riso HC5500 high-speed commercial printer ("the printer") for Moore Printing and submitted a proposal for the lease and maintenance of the printer. The proposal, which states it "is a proposal only and informative in nature[,]" provides the specifications of the printer, leasing options, and terms of a maintenance plan that included parts, labor, and ink.

On 17 April 2009, Cathy Moore ("Ms. Moore"), president of Moore Printing, signed an "Equipment Lease Agreement" with Wells Fargo Financial Leasing, Inc. ("Wells Fargo"). The lease agreement specified Wells Fargo was leasing the printer to Moore Printing and that Network Data Systems was the "equipment supplier." Although APS provided Moore Printing with the proposal and the lease agreement, and conducted the demonstration of the printer, APS is not mentioned in the lease agreement. Rather, Moore Printing entered into a separate maintenance agreement for the printer with APS.

The lease between Moore Printing and Wells Fargo included a disclaimer of all warranties and states the lessee is leasing the equip-

ment "as is." However, the lease also states that the lessee "may be entitled to the promises and warranties (if any) provided to [Wells Fargo] by the Supplier." The lease further provides that Wells Fargo did "transfer to [Moore Printing] all automatically transferable warranties, if any, made to [Wells Fargo] by the Supplier."

Moore Printing states that it began having problems with the printer shortly after taking delivery. Through its maintenance contract with Moore Printing, APS attempted to resolve the problems on several occasions, but Moore Printing had to discard many printing jobs due to the problems. Ultimately, APS was unable to resolve the printer problems to the satisfaction of Moore Printing.

On 15 March 2010, Moore Printing filed suit against APS alleging breach of contract, breach of fitness for a particular purpose, conversion, and unfair and deceptive trade practices. Moore Printing also sought rescission of the lease agreement and *quantum meruit*. On 19 April 2010, APS filed a counterclaim for nonpayment of maintenance services rendered and supplies delivered to Moore Printing.

On 17 September 2010, APS filed a motion for summary judgment asking the trial court to dismiss Moore Printing's complaint in its entirety, arguing that APS was not a party to Moore Printing's lease agreement for the printer and that any representations made by APS were not specific enough to constitute warranties. APS also moved for summary judgment on its counterclaim for lack of payment pursuant to its maintenance contract with Moore Printing. On 21 October 2010, APS moved for, and was granted, an extension to respond to Moore Printing's first set of interrogatories and requests for production of documents, extending the deadline to and including 25 November 2010. However, on 23 November 2010, after reviewing the pleadings, depositions, and documents tendered, the trial court entered an order granting APS's motions for summary judgment and awarded $4,784.50 in favor of APS on its counterclaim. Moore Printing timely appealed from this order.

### Discussion

We review the trial court's grant of summary judgment *de novo*. *Stratton v. Royal Bank of Canada*, ___ N.C. App. ___, ___, 712 S.E.2d 221, 226 (2011). To prevail on a motion of summary judgment the moving party must establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Taylor v. Ashburn*, 112 N.C. App. 604, 606, 436 S.E.2d 276, 278

(1993). The moving party can satisfy this burden "by showing either (1) an essential element of the non-movant's claim is nonexistent, (2) the non-movant cannot produce evidence to support an essential element of his claim, or (3) the non-movant cannot surmount an affirmative defense which would bar his claim." *Id.* at 606-07, 436 S.E.2d at 278.

## A. Lease Agreement

Moore Printing argues the trial court erred in granting APS' motions for summary judgment as there is a genuine issue of material fact as to whether a contract exists between Moore Printing and APS for the lease of the printer, either as a matter of fact or as a matter of law. We disagree.

### 1. "Complete Office Solutions Agreement"

[1] First, Moore Printing argues that APS' proposal for the lease and maintenance of a Riso printer was a "firm offer" under the Uniform Commercial Code ("UCC") and was accepted by Moore Printing, via the signature of Ms. Moore. Moore Printing contends that a genuine issue of material fact exists as to the scope of this agreement.

The document, which Moore Printing refers to as a "firm offer," is printed on APS letterhead and is titled "Complete Office Solutions Agreement." The text of the document contains a brief description of an "HC 5500 Main Unit" and additional items which appear to be parts associated with a printer. It also specifies the terms of a lease, "60 mo. Lease $640.00 mo." Ms. Moore's signature appears under the text "THIS CONTRACT IS NON-CANCELABLE." Moore Printing further argues that the fact that it later entered into a written agreement between Wells Fargo for the lease of the printer, does not negate the existence of the "Complete Office Solutions Agreement."

We note, however, that the UCC, as codified in our General Statues, provides, in pertinent part, that

> [a] lease contract is not enforceable by way of action or defense unless: . . . (b) there is a writing, *signed by the party against whom enforcement is sought* or by that party's authorized agent, sufficient to indicate that a lease contract has been made between the parties and to describe the goods leased and the lease term.

N.C. Gen. Stat. § 25-2A-201(1) to -201(1)(b) (2009) (emphasis added). Here, the "Complete Office Solutions Agreement" is not signed by

APS; only Ms. Moore's signature appears on the document. Therefore, the document is insufficient to form an enforceable lease between Moore Printing and APS.

## 2. Privity

[2] Alternatively, Moore Printing argues that a contract existed between itself and APS due to implied privity of contract. Moore Printing contends that through its lease agreement with Wells Fargo, Moore Printing has implied privity of contract with the company that sold the printer to Wells Fargo and that this establishes privity of contract between Moore Printing and APS.

In support of its argument, Moore Printing relies on *Coastal Leasing Corp. v. O'Neal* in which this Court held that a lease agreement between the lessor and lessee established privity of contract between the lessee and the supplier-seller (the company that sold the leased equipment to the lessor). 103 N.C. App. 230, 236, 405 S.E.2d 208, 212 (1991). In that case, the lessee negotiated a deal by which the supplier-seller sold refrigeration equipment to the lessor so that the lessor could then lease the equipment to the lessee. *Id.* at 232-33, 405 S.E.2d at 209-10. The lease expressly provided no warranties existed between the lessor and lessee, but provided that the lessee would seek redress for warranty issues against the equipment supplier-seller. *Id.* at 232-33, 405 S.E.2d at 210.

When the equipment failed to meet the lessee's needs, the lessee stopped making lease payments, prompting the lessor to file suit. *Id.* at 231, 234, 405 S.E.2d at 209-10. The lessee then filed a crossclaim against the supplier-seller of the leased equipment alleging a breach of warranty due to the equipment's poor performance. *Id.* at 231, 233, 405 S.E.2d at 210. Claiming, *inter alia*, a lack of privity, the supplier-seller was granted a dismissal of the crossclaim. *Id.* at 231, 234, 405 S.E.2d at 209, 211.

On appeal, this Court concluded the lessee and supplier-seller were in privity of contract for warranty purposes and the lessee had a cognizable claim against the supplier-seller rather than the warranty-disclaiming lessor. *Coastal Leasing Corp.*, 103 N.C. App. at 235-36, 405 S.E.2d at 212. This Court emphasized that the "clear and unambiguous language" of the lease directed the lessee to "seek relief exclusively from the [supplier-]seller of the equipment" and identified the supplier-seller by name. *Id.* at 235, 237, 405 S.E.2d at 211, 213. The Court further noted that the supplier-seller was a party to the suit. *Id.* at 234, 405 S.E.2d at 211.

While the language in the lease between Wells Fargo and Moore Printing is similar to the language in the lease at issue in *Coastal Leasing Corp.*, the present case is distinguishable. Significantly, in *Coastal Leasing Corp.*, the supplier-seller of the leased equipment was specifically identified in the lease as the entity from which the lessee should seek redress and was a party to the subsequent suit for breach of warranty. *Id.* Here, the lease agreement specifies that Network Data Systems is the supplier-seller of the leased equipment, not APS. In fact, APS is not mentioned anywhere in the lease agreement.

Furthermore, in *Costal Leasing Corp.*, this Court concluded that where the lessee was a third-party beneficiary of the sales contract between the supplier-seller and the lessor, the lessee had the right to try to prove that the equipment seller's direct representations to him, or any implied or express warranties made to the lessor, were part of the inducement to enter into the contract. *Id.* at 236, 405 S.E.2d at 212. In the present case, Moore Printing may have been a third-party beneficiary of the sales contract between the supplier-seller and Wells Fargo, but the supplier-seller, Network Data Systems, was not a party to Moore Printing's suit. Thus, we conclude the reasoning of *Coastal Leasing Corp.* does not establish privity of contract between Moore Printing and APS.

## B. Warranties

[3] Next, Moore Printing argues that APS is liable to Moore Printing as APS made actionable warranties regarding the printer. We disagree.

Moore Printing relies on the theory that the two parties are in privity of contract for the lease of the printer and any applicable warranties. The written contract between the parties, however, is only for printer maintenance and supplies. Moore Printing cites *Coastal Leasing Corp.* for the proposition that any warranties owed to Wells Fargo from the supplier-seller inure to Moore Printing. However, redress under those warranties, if any exists, would be owed by Network Data Systems, the equipment supplier-seller, not by APS.

## C. Discovery

[4] Moore Printing also argues that the trial court erred by granting summary judgment before discovery was concluded. We disagree.

Generally, it is improper for a court to enter summary judgment prior to the close of discovery as long as there are discovery procedures still pending, "which might lead to the production of evidence

relevant to the motion." *Cellu Products Co. v. G.T.E. Products Corp.*, 81 N.C. App. 474, 477, 344 S.E.2d 566, 567 (1986). In that case, this Court concluded that the information sought, by the nonmoving party was not material to the disposition of the case. *Id.* at 477, 344 S.E.2d at 567-68. Therefore, "plaintiff suffered no prejudice because the court granted the summary judgment motion prior to the completion of discovery." *Id.* at 477, 344 S.E.2d at 568.

Moore Printing fails to allege what evidence might have been produced during the three remaining days between the filing of the order granting summary judgment and the end of the discovery period. In addition, there is nothing in the record to show that Moore Printing sought any additional information through discovery prior to the order granting summary judgment. Therefore, Moore Printing fails to demonstrate it was prejudiced.

### D. Rescission

[5] Moore Printing argues that it should be able to rescind both its contract with APS and its lease with Wells Fargo for breach of warranties. We disagree.

First, Moore Printing requests this Court to rescind a contract with a party that is not before the Court. "A necessary party is one who is so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence." *Crosrol Carding Developments, Inc. v. Gunter & Cooke, Inc.*, 12 N.C. App. 448, 451-52, 183 S.E.2d 834, 837 (1971). Here, the parties to the lease agreement for the printer are Moore Printing and Wells Fargo. As Wells Fargo was not made a party to the suit, it is not possible to rescind the lease agreement.

Additionally, Moore Printing is not entitled to rescission of the maintenance contract with APS because Moore Printing's alleged basis for rescission is breach of warranties made by APS for the printer. "Rescission, an equitable remedy, is allowed to promote justice. The right to rescind does not exist where the breach is not substantial and material and does not go to the heart of an agreement." *Wilson v. Wilson*, 261 N.C. 40, 43, 134 S.E.2d 240, 243 (1964).

Moore Printing again relies on having a contract, either in fact or in law, for the lease of the printer from which Moore Printing would be entitled to warranties from APS for the printer's performance. As discussed above, Moore Printing has no such privity of contract with APS. Therefore, failure of the printer to meet performance expecta-

tions does not qualify as a substantial and material breach of the agreement between Moore Printing and APS. Moore Printing's argument is without merit.

### E. Unfair and Deceptive Trade Practices

[6] Next, Moore Printing argues that APS engaged in unfair and deceptive trade practices. Moore Printing alleges that APS "pushed" the company into leasing the printer from Wells Fargo and that APS supplied the company with a printer that did not conform to Moore Printing's requirements. We disagree.

> The elements of a claim for unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (2003) are: (1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately causes actual injury to the plaintiff or to his business.

*RD&J Props. v. Lauralea-Dilton Enters.*, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004).

Moore Printing fails to establish the elements required to sustain a claim of unfair and deceptive trade practices by APS. First, the lease agreement provided no warranty protection to Moore Printing from the lessor. Moore Printing argues that APS "pushed" it into leasing the equipment in an attempt to leave Moore Printing with no remedies if the printer did not perform. Based on the deposition of Ms. Moore, Moore Printing was not forced to sign the lease agreement but was merely "encouraged" to lease rather than purchase the printer. Second, Ms. Moore observed a demonstration of the machine in person and even though the machine was not performing satisfactorily, she attributed the problems to user error. Without further confirming the quality or performance of the printer, Moore Printing entered into the lease agreement with Wells Fargo. Thus, we cannot conclude that Moore Printing was victim of any unfair or deceptive act that prompted the company to enter into the lease agreement with Wells Fargo.

### F. Counterclaim

[7] Lastly, Moore Printing argues that the order granting summary judgment on APS' counterclaim should be reversed as the counterclaim for ink and maintenance charges were actually an attempt to cure a nonconforming good, the printer.

Under Moore Printing's theory, APS's efforts to resolve the printing problems were not made pursuant to the maintenance agreement but were attempts to cure a nonconforming good. Moore Printing characterizes its contract with APS as a purchase agreement for the printer and cites N.C. Gen. Stat. § 25-2-508(1) (2009). Section 25-2-508(1) provides that after delivery of a nonconforming good has been rejected, and time for the seller's performance has not expired, "the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery." *Id.*

Moore Printing again relies on the existence of a contract for the lease of the printer between itself and APS. As discussed above, APS is not a party to the lease agreement. Moore Printing and APS have a contract merely for maintenance and supplies for the printer and N.C. Gen. Stat. § 25-2-508(1) does not apply. Assuming *arguendo* that the printer was a nonconforming good, N.C. Gen. Stat. § 25-2-508(1) would not apply here because APS is not the seller of the printer; the equipment supplier-seller is Network Data Systems.

Furthermore, Moore Printing does not dispute that it has not paid APS for the maintenance and supplies that are the subject of the counterclaim. Plaintiff's argument is overruled.

## Conclusion

For the reasons stated above, we conclude the trial court did not err in granting defendant's motions for summary judgment.

Affirmed.

Judges STEELMAN and McCULLOUGH concur.